MIRIAM C. MILLER et al., Appellants, *v.* EGBERT RINEHART, Respondent.

D. B. Miller was the holder of certain mortgage bonds to the amount of $3,000, issued by a corporation, the payment of which was guaranteed by defendant. Pending negotiations between the bondholders and the railroad company for an adjustment, and to obtain her consent to some arrangement for a surrender of the bonds, defendant executed an instrument which, after reciting the facts and stating defendant's desire "for the surrender and cancellation of said bonds, and the substitution of other securities in the place thereof," contained the following: "In the event that any or all of the matters and things hereinbefore mentioned or referred to shall happen, or in case the said bonds or any guaranty shall be cancelled or destroyed or otherwise disposed of as required by said association hereafter, and in spite of and notwithstanding anything that may happen or be done at the request of said associa-

tion, or in behalf thereof, my aforesaid guaranty of said bonds and my obligation created and incurred by reason of said guaranty, shall remain in full character and effect, and this is hereby declared to be a continuing running guaranty for the payment of said sum of $3,000 and interest (according to the original terms of said original guaranty), attached to, and belonging to, and guaranteeing any and all securities, acts, papers, writings and proceedings of said association in regard to the said D. B. Miller, and of its indebtedness hereafter to be done, continued or made." Subsequently an agreement was made between the association and the bondholders which was executed by said Miller, under and by which the association sold and agreed to convey to a trustee for the bondholders certain real estate, at a price specified, being the amount of the outstanding bonds, " to be paid in the aforementioned bonds," and the mortgage to be cancelled of record. "It being understood (the agreement states) that there is nothing due thereon when said bonds shall be surrendered." Upon a sale of the real estate a less sum was realized than the amount of all the bonds. In an action to recover the balance, after application of their proportionate share in reduction of the amount represented by the bonds in question, *held*, that the instrument was simply one of guaranty, defendant obligating himself that the association would pay the indebtedness, evidenced by the bonds previously guaranteed by him, in whatever shape it might assume, and whatever might be accepted as a representative of the indebtedness in lieu of the bonds; and that, therefore, when the bonds were paid in full by the purchase and conveyance of the real estate, and the indebtedness thus cancelled, all liability upon the guaranty ceased, and so, the action was not maintainable.

(Argued January 22, 1890 ; decided February 25, 1890.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made May 19, 1888, which reversed a judgment in favor of plaintiff, entered upon the report of a referee, and ordered a new trial.

One William Miller purchased twelve bonds for $1,000 each, made by the Sea Cliff, etc., Association, and secured by a second mortgage upon its real estate, and also, by a chattel mortgage. He was influenced in their purchase by the defendant, who was interested in the corporate projects, and who gave, at the time of the purchase, this written guaranty :

" NEW YORK, *November* 21, 1876.

" In consideration of the sum of one dollar, to me in hand paid by Dr. Wm. Miller, the receipt whereof is hereby acknowl-

edged, I hereby guarantee to him the payment of three certain bonds numbered 16, 17 and 18, being three of a series of mortgage bonds made by the Sea Cliff Grove and Metropolitan Camp Ground Association of one thousand dollars each, dated the first day of October, 1876, payable five years from date, with interest at seven per cent., payable semi-annually on the first days of April and October, at the National Shoe and Leather Bank.

"This guarantee to include principal and interest..

"Witness my hand this 4th day December, 1876.

"EGBERT RINEHART."

Miller subsequently died, and the bonds came into the possession of Dorothy B. Miller. While so held, an effort was made to effect an adjustment between the company and the second mortgage bondholders. The matter was in the hands of a joint committee and a meeting of bondholders was called for the afternoon of a certain day to receive the report. The report was sealed and the details of the plan were not definitely known. In the morning of the day for the meeting Mrs. Miller was approached to obtain her assent to some adjustment and to a surrender of her bonds. It was given upon the defendant's executing the following agreement :

"Whereas, on the twenty-first day of November, or the fourth day of December, 1876, I, Egbert Rinehart, did guarantee the payment to Dr. William Miller of the three bonds mentioned in the paper hereunto annexed and marked 'A,' as in said paper mentioned (which said bonds are now the property of Mrs. D. B. Miller, widow of said William Miller).

"And whereas, said bonds are a lien on the lands and real estate of the association mentioned in said paper 'A,' which paper is made a part of this instrument.

"And whereas, I also desire the surrender and cancellation of said bonds and the substitution of other securities in the place thereof, to which the said D. B. Miller has consented and agreed.

"Now, therefore, in consideration of the premises and of the sum of one dollar to me in hand paid by said D. B. Miller,

and also divers other good and valuable considerations to me
paid, the receipt whereof is hereby confessed and acknowledged,
I, the said Egbert Rinehart, do hereby agree and further
guarantee to and with said D. B. Miller, that in the event that
any or all of the matters and things hereinbefore mentioned
or referred to shall happen, or in case the said bonds of my
said guaranty shall be cancelled or destroyed, or otherwise dis-
posed of as required by said association hereafter, and in spite
of and notwithstanding anything that may happen or be done
at the request of said association, or in behalf thereof, my
aforesaid guaranty of said bonds and my obligation created and
incurred by reason of said guaranty, shall remain in full character
and effect, and this is hereby declared to be a continuing run-
ning guaranty for the payment of said sum of three thousand
dollars and interest (according to the original terms of said
original guaranty), attached to, and belonging to, and guaran-
teeing any and all securities, acts, papers, writings and proceed-
ings of said association in relation to the said D. B. Miller, and
of its indebtedness to her hereafter to be done, continued or
made.

"As witness my hand and seal this eighteenth day of Febru-
ary, A. D., 1880.

"EGBERT RINEHART. [L. S.]"

Subsequently, at the bondholder's meeting, an agreement
was proposed and signed by Mrs. Miller, through her attorney,
and by the other holders of bonds. It recited the issuance by
the company of the bonds to the amount of $78,200, secured
by second mortgage; that the company was "desirous of pay-
ing and settling in full the aforesaid bonds and coupons for
interest, and to have the mortgage discharged of record," and
the agreement was, first, that it sold and was to convey to a
trustee for the bondholders certain hotel property and certain
216 lots.

"Second.— The said bondholders hereby purchase from the
said, the 'Sea Cliff Grove and Metropolitan Camp Ground
Association,' the aforesaid property at the price or sum of
seventy-eight thousand two hundred dollars ($78,200), upon

the terms hereinbefore mentioned, and agree to pay the said sum of seventy-eight thousand two hundred dollars ($78,200) in the aforementioned bonds of the said the 'Sea Cliff Grove and Metropolitan Camp Ground Association,' held by us respectively, and secured by the mortgage aforesaid, to John H. Stout and George B. Remsen ; and we do further agree to cancel or to cause the said mortgage to be cancelled of record. It being understood that there is nothing due thereon when said bonds shall be surrendered, and surrender up the bonds of said association, together with the coupons for interest from the date of the last payment on said coupons on receiving the conveyance covenanted to be given in the first article of this agreement.

" This agreement is to bind the heirs, successors and assigns of the respective parties thereto, to the extent of the bonds held by them respectively, to a conveyance of a *pro rata* portion of said property to the extent of their said bonds, at the valuation this day submitted, a copy of which is hereto annexed and marked Schedule 'B,' and is to be performed and completed within six months of the date hereof.

" This instrument not to be binding unless signed by all the bondholders."

Subsequently these plaintiffs became the owners of the lots, and also the assignees of all rights under the agreements of guaranty of this defendant. The lots were sold at public auction in 1885, and, realizing less than the value of the bonds originally held, the plaintiffs commenced this action to hold the defendant for the difference, after proportionately applying the proceeds of sale to the amount represented by the former bonds mentioned in his guaranty.

*B. Estes* for appellant. The case on appeal to the General Term and to this court did not and does not contain any certificate, nor any statement whatever, to the effect that it contained, or now contains, all the evidence given on the trial, nor does it in any manner show that it included, or now includes, all the evidence bearing upon any question sought to

be reviewed at the General Term. This omission precluded the General Term from reviewing any question of fact. (*Porter* v. *Smith*, 107 N. Y. 531; *D. S. M. Co.* v. *Best*, 50 Hun, 76; *Fell* v. *N. Y. L. Works*, 20 N. Y. S. R. 577; *Maxon* v. *Maxon*, 16 id. 74; *Averell* v. *Hurd*, 15 Civ. Pro. Rep. 162; *Wilkinson* v. *Herbert*, N. Y. S. R. 436; *Graff* v. *Ross*, 47 Hun, 152; *Harkness* v. *N. Y. E. R. R. Co.*, 23 J. & S. 532; *Cortice* v. *West*, 50 Hun, 47; *Spence* v. *Chambers*, 39 id. 193; *Lowery* v. *Erskine*, 113 N. Y. 52; *Baird* v. *Mayor, etc.*, 96 id. 577; *Van Buckelin* v. *Berdel*, 21 N. Y. S. R. 429; *Sterling* v. *M. L. Ins. Co.*, 17 id. 694; *M. H. Bank* v. *Van Antwerp*, 21 id. 377; *Day* v. *Town of New Lots*, 107 N. Y. 148; *Manchester* v. *Tibbetts*, 19 N. Y. S. R. 299; *Foote* v. *Valentine*, 48 Hun, 475; *Gardiner* v. *Schwab*, 110 N. Y. 650; *Mullinhoff* v. *Scherer*, 15 Civ. Pro. Rep. 160; *Donohue* v. *Hammel*, 17 N. Y. S. R. 994; *Porter* v. *Smith*, 35 Hun, 118; 107 N. Y. 531; *Spencer* v. *Chambers*, 36 Hun, 193.) The defense that the Sea Cliff lots were taken and received in full payment of the $3,000 for which the bonds were given, is inconsistent with the defense of compromise; the defendant elected to try the case on the former theory and waive the latter. No such question, therefore, can be raised on appeal. (*Nealan* v. *G. T. R. R. Co.*, 24 Wkly. Dig. 523, 525.) To make out the defense of payment in this case, the onus is upon the defendant to prove affirmatively that the lots were taken by Mrs. Miller under an express agreement that they should be received in actual full payment of the debt, but, instead of that being done, the evidence clearly establishes that the lots were not taken in full payment, and the referee has so found. (*K. Bank* v. *Gay*, 19 Barb. 459; *Crane* v. *McDonald*, 45 id. 354; *Noel* v. *Murray*, 13 N. Y. 167; *Foley* v. *Barber*, 5 Johns. 68; *Palmer* v. *Guersney*, 7 Wend. 248; *Claflin* v. *Ostrom*, 54 N. Y. 581, 585.) The instrument on which this action is founded is more than a guaranty, but, if it were not, we should still insist that this action is clearly maintainable. (*Allen* v. *Rightmere*, 20 Johns. 365; *Douglass* v. *Howland*, 24 Wend. 48, 49, 50; *Union*

*Bank* v. *Coster*, 3 N. Y. 203 ; *Schulty* v. *Crane*, 6 Hun, 236 ; 64 N. Y. 659 ; *Claflin* v. *Ostrom*, 54 id. 581 ; *E. N. Bank* v. *Kaufman*, 93 id. 273 ; *Everson* v. *Gere*, 40 Hun, 248 ; *Arnot* v. *E. R. R.*, 67 N. Y. 315 ; *McLaren* v. *Watson*, 26 Wend. 425 ; *Gould* v. *Ellery*, 39 Barb. 163 ; *In re Blakely*, 27 Eng. L. & Eq. 280 ; *Wyke* v. *Rogers*, 12 id. 162 ; *Woodcock* v. *O. & W. R. R. Co.*, 21 id. 285 ; *Wright* v. *Stores*, 6 Bosw. 600 ; Bayliss on Sureties & Guar. 290 ; *Morgan* v. *Smith*, 70 N. Y. 537 ; *Culro* v. *Damies*, 73 id. 217 ; *Palmer* v. *Purdy*, 83 id. 144 ; *N. Bank* v. *Bigler*, Id. 51 ; *Hagey* v. *Hill*, 75 Penn. St. 109 ; *Underhill* v. *Palmer*, 10 Daly, 478 ; 50 N. Y. 375 ; 4 Johns. Ch. 131 ; 2 H. & W. L. C. 370 ; Brandt on Sureties, § 373 ; *People* v. *Lee*, 104 N. Y. 441 ; *C. M. L. Ins. Co.* v. *C., etc., R. R. Co.*, 41 Barb. 9 ; 22 How. Pr. 56 ; 24 Wend. 35 ; *W. & O. C. Ins.* v. *Blackmer*, 48 N. Y. 663 ; *Mead* v. *Parker*, 41 Hun, 577 ; *Milk* v. *Rich*, 15 id. 178 ; 80 N. Y. 27 ; *White* v. *Baxter*, 71 id. 255 ; *Diossy* v. *Morgan*, 74 id. 11 ; *Harrison* v. *Nilkin*, 69 id. 412 ; *P. C. Co.* v. *Blake*, 85 id. 226 ; *Enos* v. *Thomas*, 4 How. Pr. 49 ; *Winchell* v. *Doty*, 15 Hun. 1 ; *Hennandez* v. *Stillwell*, 7 Daly 360; *Tooker* v. *Winston*, 17 Wkly. Dig. 303 ; *Humfrey* v. *Hayes*, 94 N. Y. 594 ; *Hurd* v. *Callahan*, 9 Abb. [N. C.] 374; *Raynor* v. *Lanx*, 28 Hun, 35 ; *Herring* v. *Sanger*, 3 John. Cas. 71 ; *White* v. *Baxter*, 71 N. Y. 255.) A referee's refusal to find a fact as requested is not ground for exception where there is any conflict of evidence. (*Porter* v. *Carpenter*, 71 N. Y. 74 ; *Putnam* v. *Furman*, Id. 590 ; *Porter* v. *Smith*, 35 Hun, 118.) Death, pedigree, etc., may be proved by reputation. (*Stouvenwell* v. *Stevens*, 26 How. Pr. 244; *Jackson* v. *King*, 5 Cow. 239 ; *Russell* v. *Jackson*, 22 Wend. 277 ; *Jackson* v. *Bonehan*, 18 Johns. 37.) That the defendant cannot raise any question on appeal, which he has waived on the trial, is too well settled to require citation of authorities. (*Osgood* v. *Teale*, 60 N. Y. 475.) Rinehart having, for his own benefit, requested the surrender and cancellation of the bonds and the substitution of other security, and promised and agreed that, if that should be done, he would be responsible ;

and the request having been acted upon and complied with by the owner of the bonds, he cannot now claim that such surrender and cancellation was an extinguishment of the debt and relieved him from all liability. He is estopped from setting up any·such defense. (*Jackson* v. *Parkhurst,* 9 Wend. 209; *C. C. Bk.* v. *Reilly,* 4 Den. 481; *Torey* v. *Bank of Orleans,* 9 Paige, 649; *Demeyer* v. *Legg,* 18 Barb. 14; *Dempysey* v. *Tyler,* 3 Duer, 73.)

*G. H. Crawford* for respondent. The defendant, being a guarantor, may stand upon the strict terms of his obligation. (*Ward* v. *Stahl,* 81 N. Y. 408; *People* v. *Chalmers,* 61 id. 351; *Miller* v. *Stewart,* 9 Wheat. 680; *Albany, etc.,* v. *Dorr,* 1 Den. 268; *Ludlow* v. *Simond,* 2 Caines' Cas. in Error, 1.) After the execution and subsequent fulfillment of the agreement of February 18, 1880, the bondholders had no remedy against the Sea Cliff Association, even if the property received by them respectively should not realize the full amount of the bonds. (*Lainson* v. *Tremere,* 1 Ad. & Ell. 792; *Bowman* v. *Taylor,* 2 id. 278; *Wiles* v. *Woodward,* 5 Exch. 557; *Cutter* v. *Bowen,* 11 Q. B. 973; *Van Rensselaer* v. *Kearney,* 11 How. Pr. 323.) It is open to the respondent, in an appeal taken from an order granting a new trial upon stipulation, to urge errors of the Trial Court which were not noticed by the General Term. (*Mackay* v. *Lewis,* 73 N. Y. 382; *Godfrey* v. *Moses,* 66 id. 254; *Simon* v. *Canaday,* 53 id. 298; *People* v. *Lacoste,* 37 id. 192.)

GRAY, J. After much hesitation and with some degree of reluctance, I have come to the conclusion that this appeal cannot succeed. The question is, what was the obligation assumed by the defendant towards the holder of the bonds of the Sea Cliff Association, when he executed the instrument of February 18, 1880? That paper seems to introduce some doubt, and tends to confuse the mind, by the use of inapt words and by expressions which are certainly not calculated to make the meaning of the parties perfectly plain. It has frequently been said that our

language is lacking in precision; but that fault will not alone account for the way in which the draughtsman has in this writing succeeded in darkening its meaning and in contributing an element of uncertainty to its purpose. If there ever was a case where resort to extrinsic circumstances connected with its making was permissible, this is one. But when we come to consider what they were, I doubt if we are much better off in our understanding. What gave rise to this agreement of the defendant was the circumstance that Mrs. Miller, the holder of the bonds, refused to assent to any arrangement with the Sea Cliff Company, under which the bonds should be surrendered to it. That company was endeavoring to effect an adjustment of its affairs, through which it might rid its property of the lien of the mortgage securing these and other bonds. The defendant was an officer and was interested in the success of its efforts for an adjustment, but of the details of the arrangement for it he knew little, if anything. They were confided to a committee, agreed upon by the trustees of the association and the bondholders. A bondholders' meeting was called for the afternoon of February 18, 1880, at which a plan of settlement was to be presented in a sealed report. In order to induce Mrs. Miller to yield in her objections to the surrender of her bonds, the defendant made the agreement in question. At the time, she already held the defendant's obligation of November 21, 1876, guaranteeing to Wm. Miller, her predecessor in interest, the payment of the bonds. This was a clear and simple agreement of the defendant, by which he became at once liable to pay the amount of the bonds, if the obligor named failed in its obligation to the holder. And here we must notice that these bonds were originally acquired by purchase from the company. This is admitted by the pleadings; and they were not taken originally by the predecessor in interest of the plaintiffs as collateral security for an indebtedness of the company to him, as it seems to be suggested by the plaintiffs. Their purchase was induced by the defendant, and the above guaranty was then executed; defendant being interested in the projects of the company as promoter and

otherwise.   So the question was, when the subsequent holder of the bonds was asked to give them up, how should she be further protected, as an inducement to do that?   What plan of adjustment, which the bondholders would be requested to enter into, would be reported was not apparently definitely known by the parties, at any rate not by Mrs. Miller, and this ignorance might account for the indistinctness of the agreement made by the defendant with her in the morning before the bondholders' meeting.   Its recitals comprehend the purpose of a release of the lien upon the company's land, and "the surrender and cancellation of the bonds and the substitution of other securities in the place thereof, to which the said D. B. Miller has consented and agreed."   What the defendant then obligates himself to do is expressed as follows, viz. :

"In the event that any or all of the matters and things hereinbefore mentioned or referred to shall happen, or in case said bonds or my said guarantee shall be cancelled or destroyed, or otherwise disposed of, as required by said association hereafter, and in spite of and notwithstanding anything that may happen or be done at the request of said association, or in behalf thereof, my aforesaid guarantee of said bonds, and my obligation created and incurred by reason of said guarantee, shall remain in full character and effect ;· and this is hereby declared to be a continuing, running guarantee for the payment of said sum of three thousand dollars and interest (according to the original terms of said original guarantee) attached to and belonging to and guaranteeing any and all securities, acts and paper-writings and proceedings of said association in relation to the said D. B. Miller, and of its indebtedness to her, hereafter to be done, continued or made."

When that instrument was executed, what resulted?   No change of position yet, but only the consent of Mrs. Miller to to do the certain thing recited ; namely, to take other securities in the place of her bonds.   She had not bound herself to anything more.   But did the defendant bind himself to any further extent than, at most, to agree that the company should

pay the indebtedness, which had been previously guaranteed by him? The only language, which might be deemed capable of the broadest meaning, is in the declaration that this guarantee attaches to and guarantees " any and all securities, acts, papers, writings and proceedings of said association in relation to the said D. B. Miller and of its indebtedness to her, hereafter to be done, etc." Now it must be conceded that everywhere in the paper the defendant binds himself to observe the first guaranty of payment of the bonds; and, in addition, to the payment of the indebtedness thus evidenced by them, in any other, or new, form and shape it might assume, in the stead of these particular bonds. We cannot say that, by this instrument, he put himself in the place of the debtor company and became the debtor; leaving the company freed. Neither the paper-writing, nor the subsequent acts of the parties, permit of our entertaining any such proposition. I concede the motives of the defendant to have been based on personal interest in the success of the adjustment scheme and that the legal adviser of the holder of the bonds tried by words and varied expressions to secure his client, by an agreement of the defendant. And he did so, in so far as it was an agreement that the company should pay its debt, however evidenced thereafter. Are we to assume from such language that the defendant ever said, or intended to do, more? Or that he would assume the whole debt himself? Clearly not, and the whole difficulty of the plaintiffs' case is just this, that they construe the defendant's agreement to be a raising of the debt from off of the company and its assumption by himself.

I think it perfectly clear that we cannot hold that agreement to import a greater obligation than that, whatever else might be offered to and accepted by the bondholder, in lieu of her bonds, and as representative of the indebtedness they evidenced, the defendant would guaranty the eventual payment of such indebtedness. It was an instrument of guaranty and nothing more. If so, then we cannot deny to the defendant the protection of the rule of law that his liability shall not be extended beyond the clear obligation of the agreement itself; though

we may be at liberty to inquire, in cases of doubt and ambiguity, as to the extent of ground covered by its terms. It is not his debt, the payment of which is being secured, but the debt of another, and strict construction of the promise is but a matter of legal right and of justice, which we cannot disregard. The holder of the bonds was quite at liberty to refuse to change her position of security and to give up her bonds, without that the company gave to her a security of some kind evidencing, or assuring its debt to her. She had not consented to forgive or release the debt, only to a change in the form of it. When, therefore, her legal adviser, as her agent, attended the bondholders' meeting, in the afternoon of the day when this guaranty was made, she was not bound to compromise her position towards the defendant by any such act as her attorney performed for her, in the signing of the bondholders' agreement. Client and attorney were chargeable with the legal import of the defendant's agreement, and, as well, with the legal effect of any contract with the company respecting her claims against it The contract, which was executed between the company and the bondholders, involved the payment in full of its bonds, by the purchase therewith of a certain number of lots of land. Its only possible object was to discharge so much indebtedness as they represented, by the conveyance of lands at a price fixed as equivalent to the par of the bonds. Such a contract it was open to the bondholders to reject, or to make. Mrs. Miller could have declined to execute it, or to release to the company the indebtedness represented by the bonds, and she would have been as safe as ever she had been previously. But she bound herself to its terms, and when she got the lots, her claims against the company were extinguished. I cannot understand the proposition that, in such a transaction, where mortgaged premises are conveyed, in whole, or in part, for the release of the mortgage and the cancellation of the bonds, the land in any sense represents the original indebtedness, so as, if it subsequently sells at a less ratio of value than the par of the mortgage bonds, an agreement guaranteeing the full payment of the bonded indebtedness can be resorted to. I do not think

that resort to extrinsic facts and circumstances can be allowed for the purpose of extending a promise of guaranty to an assurance of the sufficiency in value of what is taken in payment by the creditor. Very precise and unmistakable words would be needed to that end.

I see nothing more in the plaintiffs' claim. Their argument is that the defendant's agreement covered any deficiency towards the original claim, after the sale of the lots, which were taken, under the bondholders' agreement, for the bonds. The answer is that its language imports no such obligation, in terms express, or implied. By words and by expressions, the idea is made dominant that the company's existing indebtedness should be paid, no matter what the form it offered to evidence it in; but it did not bind the defendant in case that indebtedness was settled for. It did not bind him, if the company paid off its debt, so as to remain released to its creditors and to the world, to stand ready, if what was taken in payment failed, at some time in the near or remote future, to realize an amount equal to the original debt, to assume the deficiency.

I think the decision of the General Term was right and that its order should be affirmed, and, under the appellant's stipulation, judgment absolute should be rendered against them, with costs.

All concur, except EARL and PECKHAM, JJ., dissenting.

Order affirmed and judgment accordingly.